

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALI FARHAT,<br><br>Defendant. | Criminal No. 1:25-CR-162<br><br>Count One:<br>Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization<br>18 U.S.C. § 2339B<br><br>Count Two:<br>Conspiracy to Launder Money<br>18 U.S.C. § 1956(h) |

## INDICTMENT

June 2025 Term – At Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise specified:

### General Allegations

1.  Hizballah ("Party of God," also transliterated from Arabic as Hizbullah or Hezbollah) is a Lebanon-based Shia Islamic organization with political, social, and terrorist components. Founded in the early 1980s with support from Iran, its mission includes establishing a fundamentalist Islamic state in Lebanon. On October 8, 1997, the U.S. Secretary of State designated Hizballah a Foreign Terrorist Organization ("FTO"), under Section 219 of the Immigration and Nationality Act. The designation included the following aliases: Party of God, Islamic Jihad, Islamic Jihad Organization, Revolutionary Justice Organization, Organization of the Oppressed on Earth, Islamic Jihad for the Liberation of Palestine, Organization of Right Against Wrong, Ansar Allah, and Followers of the Prophet Muhammad. On May 16, 2017, the

Secretary of State amended the designation of Hizballah to include the following aliases: Lebanese Hizballah, also known as LH; Foreign Relations Department, also known as FRD; and External Security Organization, also known as ESO, also known as Foreign Action Unit, also known as Hizballah ESO, also known as Hizballah International, also known as Special Operations Branch, also known as External Services Organization, also known as External Security Organization of Hezbollah. To date, Hizballah remains a designated FTO. In 2001, pursuant to Executive Order 13224, the U.S. Department of the Treasury designated Hizballah a Specially Designated Global Terrorist entity. In 2010, State Department officials described Hizballah as the most technically capable terrorist group in the world, and a continued security threat to the United States.

2. Hizballah owns and operates Al Manar TV ("The Beacon"), a television station based in Lebanon that is designed to cultivate support for Hizballah's activities and mission. Through its broadcasts on Al Manar TV, Hizballah endeavors, among other things, to raise money for its activities and to recruit volunteers for future attacks.

3. ALI FARHAT (DEFENDANT) is a dual citizen of the United States and Lebanon who resides in Lebanon. The DEFENDANT owned and operated a Lebanese company ("COMPANY 1"). COMPANY 1 did business at least in part by acquiring electronics equipment in the United States and reselling it to other entities located primarily in the Middle East and Africa.

4. CO-CONSPIRATOR 1 is the DEFENDANT's relative and a dual citizen of the United States and Lebanon residing within the Eastern District of Virginia.

### *The Scheme*

5. One of the DEFENDANT's and COMPANY 1's customers was Al Manar TV. The DEFENDANT and COMPANY 1 used CO-CONSPIRATOR 1 and other U.S.-based co-conspirators to purchase audio, video, and other equipment in the United States. After their purchase, the merchandise was consolidated, often at the residence of CO-CONSPIRATOR 1, and then shipped overseas, at which point some of it was sold to Al Manar TV or to front companies affiliated with Al Manar TV for the benefit of Al Manar TV.

6. The DEFENDANT arranged for the purchase of these items in a convoluted manner designed to obscure the source of the funds and the intended destination of the items, including by directing CO-CONSPIRATOR 1 to lie to vendors about the intended destination of the items, to underreport the quantity and value of items when they were shipped overseas, and other means.

## COUNT ONE
*Conspiracy to Provide Material Support to
a Foreign Terrorist Organization*

THE GRAND JURY CHARGES THAT:

7. Paragraphs 1-6 of the General Allegations section of this Indictment are incorporated by reference and re-alleged as though fully set forth herein.

8. In or about 2010, and continuing thereafter up to and including February 2021, both dates approximate and inclusive, within the Eastern District of Virginia and elsewhere, including Lebanon, the defendant, ALI FARHAT, together with others known and unknown to the Grand Jury, did knowingly conspire to provide "material support or resources," as defined in Title 18, United States Code, Section 2339A(b), namely property, to a foreign terrorist organization, namely Hizballah, knowing that the organization was a designated foreign terrorist organization, that the organization engages and has engaged in terrorist activity, and that the organization engages and has engaged in terrorism.

(Title 18, United States Code, Section 2339B)

## COUNT TWO
*Conspiracy to Launder Money*

THE GRAND JURY FURTHER CHARGES THAT:

9. Paragraphs 1-6 of the General Allegations section of this Indictment are incorporated by reference and re-alleged as though fully set forth herein.

10. From in or about 2010, and continuing thereafter up to and including February 2021, both dates approximate and inclusive, within the Eastern District of Virginia and elsewhere, including Lebanon, the defendant, ALI FARHAT, together with CO-CONSPIRATOR 1 and others known and unknown to the Grand Jury, did knowingly conspire, combine, confederate and agree to:

  (a) transport, transmit, and transfer monetary instruments and funds from places outside the United States to and through places in the United States and from places in the United States to and through places outside the United States, knowing that the monetary instrument or funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part—

   i. to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit: the criminal activity described in Count One of this Indictment, that is: providing "material support or resources," namely property, to a designated foreign terrorist organization, namely Hizballah, in violation of Title 18, United States Code, Section 2339B (the "Specified Unlawful Activity"), contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

### Ways, Manner, and Means of the Conspiracy

The ways, manner, and means by which the DEFENDANT sought to accomplish the conspiracy included, among others, the following:

11. The DEFENDANT directed CO-CONSPIRATOR 1 to pay for COMPANY 1's expenses, including those incurred for the purchase and shipping of merchandise.

12. The DEFENDANT would periodically reimburse CO-CONSPIRATOR 1 for expenses related to purchases made for COMPANY 1. The DEFENDANT also paid CO-CONSPIRATOR 1 a commission on purchases made for COMPANY 1. The DEFENDANT transferred money to CO-CONSPIRATOR 1 and other co-conspirators primarily but not exclusively through the following methods:

   a. The DEFENDANT caused international wire transfers to be paid to CO-CONSPIRATOR 1, including into a bank account in a third party's name that was controlled by CO-CONSPIRATOR 1 ("THIRD PARTY ACCOUNT"). In total, over the course of the conspiracy, the defendant sent approximately $1,192,000 in international wire transfers to CO-CONSPIRATOR 1.

   b. The DEFENDANT utilized a hawala,[1] wherein DEFENDANT made a payment in Lebanon that triggered a Florida-based co-conspirator (CO-CONSPIRATOR 2) to send structured money orders to CO-CONSPIRATOR 1 and/or other United States-based co-conspirators. The money orders were purchased in amounts that

---

[1] A hawala is a system or agency for transferring money traditionally used in the Middle East, North Africa, and elsewhere, whereby money is paid to an agent who then instructs a remote associate to pay the final recipient.

evaded anti-money laundering regulations. Typically, the money orders were under $1,000 U.S. dollars each, but multiple money orders were purchased within a narrow time period so that the total exceeded $3,000 U.S. dollars. In total, over the course of the conspiracy, the defendant caused approximately $396,160 in structured money orders to be paid to U.S.-based co-conspirators.

c. CO-CONSPIRATOR 1 filed U.S. tax returns on the DEFENDANT's behalf containing false information. CO-CONSPIRATOR 1 used the tax refund generated to offset expenses incurred on the DEFENDANT's and/or COMPANY 1's behalf.

d. The DEFENDANT caused other known and unknown co-conspirators and businesses to send wire transfers and transfers over digital payment networks to CO-CONSPIRATOR 1. In total, over the course of the conspiracy, the defendant caused approximately $130,000 to be transferred in this manner to CO-CONSPIRATOR 1.

(In violation of Title 18, United States Code, Section 1956(h))

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

The DEFENDANT is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offense set forth in Count One of the Indictment, the DEFENDANT shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property real or personal, which constitutes or is derived from proceeds traceable to the offense; and pursuant to 18 U.S.C. § 981(a)(1)(G) and 28 U.S.C. § 2461(c), the following: (1) all assets of the DEFENDANT, foreign or domestic; (2) all assets of the DEFENDANT acquired or maintained with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism; and (3) all assets of the DEFENDANT derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism.

The DEFENDANT is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offense set forth in Count Two of the Indictment, the DEFENDANT shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the violation, or any property traceable to such property.

Pursuant to 21 U.S.C. § 853(p), the DEFENDANT shall forfeit substitute property, if, by any act or omission of the DEFENDANT, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has

(continued on next page)

been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 981(a)(1)(G), and 982(a)(1); Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853; and Rule 32.2(a) of the Federal Rules of Criminal Procedure)

A TRUE BILL:

Pursuant to the E-Government Act, The original of this page has been filed under seal in the Clerk's Office

FOREPERSON OF THE GRAND JURY

Erik S. Siebert
United States Attorney

By: *[signature]*
Anthony T. Aminoff
Assistant United States Attorney